UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

J. TACOPINA P.C., d/b/a TACOPINA SEIGEL & DeOREO,

                   *Plaintiff,*

    – against –

JAMES CHRISTOPHER PITTMAN,

                   *Defendant.*

------------------------------------------------------------x

Case No.

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff J. Tacopina P.C., d/b/a Tacopina Seigel & DeOreo ("TSD" or "Plaintiff") complaining of defendant James Christopher Pittman ("Pittman" or "Defendant"), alleges as follows:

### INTRODUCTION AND PRELIMINARY STATEMENT

1. This diversity action arises from a breach of a $750,000 flat fee agreement for legal services consummated by TSD and Pittman for which $97,000 remains unpaid.

2. Pittman never challenged or objected to the amount owed, and repeatedly reaffirmed this obligation.

3. Not only did he never object, but he in fact signed a financial affidavit that was produced in his criminal case, indicating a $100,000 debt for legal fees owed to TSD, which was the outstanding balance owed to TSD at that time. This specific affidavit was signed before the payment of $3,000 made by Pittman on June 16, 2025 that reduced the amount owed to $97,000.

4. An account stated has also been established in favor of TSD because TSD sent Pittman numerous written requests for the $750,000, or for the remaining balance owed, and Pittman never objected to this debt and repeatedly admitted that it was owed.

5. Therefore, Pittman clearly owes TSD $97,000 with prejudgment interest.

## JURISDICTION

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of New York State, the Defendant is a citizen of the State of Texas, and the amount in controversy exceeds $75,000.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in said District.

## PARTIES

8. Plaintiff is a professional corporation organized to practice law under the laws of the State of New York, with offices located in New York County.

9. Defendant is an individual who is a citizen or subject of the State of Texas.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

10. In or about February 2023, Pittman retained TSD to represent him in the pretrial phase of the criminal case *United States v. James Christopher Pittman,* Docket No. 21-cr-00193-KAM-6, which was pending in the Eastern District of New York.

11. In or about February 2023, Pittman promised TSD that he would pay TSD $750,000 as a flat fee ("Flat Fee") for legal services in the criminal case ("Flat Fee Agreement").

12. TSD acknowledged in the retainer agreement that Pittman had already paid $200,000, leaving a remaining balance of $550,000 due.

13. In reliance on that promise, TSD performed under the Flat Fee Agreement for several years thereafter.

14. Pittman never fully paid the $750,000 Flat Fee, even though he continuously confirmed that he owed the Flat Fee and would pay it. Indeed, he never once denied that he owed

the Flat Fee or challenged the Flat Fee Agreement.

15. Additionally, Pittman made multiple partial payments toward the Flat Fee, including: (a) $200,000 on October 24, 2022; (b) $50,000 on February 24, 2023; (c) $50,000 on February 28, 2023; (d) $50,000 on May 12, 2023; (e) $300,000 on October 17, 2023; and (f) $3,000 on June 16, 2025.

16. TSD also sent Pittman numerous written communications stating that he owed the $750,000 Flat Fee, or the remaining portion of the Flat Fee. Pittman received those written communications and never once disputed his obligation to pay fees to TSD. Instead, he continuously promised to pay the Flat Fee or its remaining balance.

17. Pittman merely stated that due to his financial difficulties, he needed additional time to pay the Flat Fee.

18. After October 17, 2023, when Pittman had paid a total of $650,000, TSD continued to demand the remaining $100,000 portion of the Flat Fee. Pittman repeatedly promised to make the payment, stating that he needed additional time, and at no point did he dispute the Flat Fee, the Flat Fee Agreement, or the $100,000 outstanding balance. Significantly, on June 16, 2025, Pittman made a nominal payment of $3,000, thereby acknowledging his obligation to satisfy the outstanding balance.

19. Below is the description of some of the communications referenced above:

    a. On February 20, 2023, Pittman emailed TSD: *"Hi guys, please send me your wiring instructions so I can get some money to you this week. Thank you, Chris."*

    b. On February 27, 2023, Pittman emailed TSD: *"Good morning Mariela, you*

3

*should have received a wire of $50k on Friday from my parents. Stacy Walters will be sending a wire to you today of $50k (it might not hit until tomorrow morning because she is in LA). Thank you, Chris Pittman."*

c. On January 6, 2024, TSD sent a text message to Pittman stating: *"Chris, I know you have a lot on your financial plate, but I'm not looking for a stay in a condo as consideration. You have an outstanding balance with us. But I'm with my family now, so let's talk about all this next week. Try to enjoy the rest of the weekend."* Pittman replied: *"Please let me know the balance. Are you still going to represent me in the sentencing phase?"* And TSD responded: *"There's still 100k due. And yes, we're still representing you in sentencing."*

d. On May 3, 2024, TSD emailed Pittman advising he would need to include the $100,000 debt owed to TSD in the financial statement requested by the Probation Officer for his pending criminal case, as outstanding legal fees. Specifically, TSD wrote: *"Chris, I was discussing the document with the office. There is another inaccuracy: in the Section B of LIABILITIES, you must list also the outstanding legal fees that are contractually owed to our law firm. If you don't do it, it would be a false financial statement. Please, correct it as soon as possible."*

e. On the same day, May 3, 2024, Pittman returned the corrected form by email, enclosing the signed financial affidavit and conceding the $100,000 debt owed to TSD: *"Here is the completed copy, as requested."*

f.  On October 8, 2024, Pittman emailed TSD requesting a statement of his outstanding balance for attorney's fees: *"Also, can you have someone send me a statement of my outstanding balance for attorney's fees. Thank you, Chris Pittman."* To which TSD responded: *"I will have our office manager send you a statement of your outstanding balance of $100,000. Do you have any idea when you'll be able to take care of it?"*

g.  Later that same day, October 8, 2024, Pittman replied that it would take him some time to pay off the balance, but he did not deny owing the amount or dispute his obligation to pay it: *"Thank you, it's going to take a while for me to pay off that balance. If I can maintain my license and not go to prison, then it shouldn't take too long. Thank you, Chris Pittman."* And, approximately an hour after this email, Pittman emailed again: *"Also, if I can get this tax delinquency reconciled with a settlement offer to the IRS (which by tax attorney is working on now), then I can promptly start chipping away at what I owe you guys. Thank you, Chris Pittman."*

h.  On October 9, 2024, TSD, answering to Pittman's request, emailed him sending an invoice for the outstanding balance of $100,000, along with a copy of the original retainer agreement: *"Good morning, See attached invoice regarding the outstanding balance due and a copy of the retainer agreement. Please let me know when to expect payment. Thank you."*

i.  In early June 2025, TSD communicated with Pittman, who stated that he wanted to begin making payments toward his balance.

j. On June 16, 2025, Pittman made a nominal payment of $3,000.

k. On September 25, 2025, TSD sent a text message to Pittman stating: *"I was talking to Chad and Joe about your $97,000 outstanding balance... how do you intend to proceed? Thanks."*

l. On September 29, 2025, Pittman replied: *"Thank you Ele. With regard to [the] balance, I would like to set up a payment plan. As yo[u] know, I'm currently low on funds but want to work something out."*

m. The same day, September 29, 2025, TSD responded to Pittman: *"Thank you, Chris. What do you have in mind for a payment plan?"*

n. On October 2, 2025, texted TSD, stating: *"Hi Ele, I'm going through my accounting and will propose a plan on Monday. The SEC just contacted my attorney fyi."* To which TSD responded: *"Ok Chris, we'll expect to hear from you then. Thanks!"*

o. On October 7, 2025, TSD reached out to Pittman once again, after not having heard from him, with a text message: *"Hi Chris, We haven't yet received the payment plan you indicated you would send yesterday. I need to let you know that Chad is becoming increasingly frustrated by the continued lack of communication and the absence of any visible effort to resolve the outstanding balance. If you have a payment schedule in mind – which must include an initial immediate payment – please share it with us as soon as possible. If it's not received promptly, or if the proposed terms are insufficient, Chad intends to commence an action later this week."*

p. The same day, October 7, 2025, Pittman replied: *"This was not intentional. The probation office called me in last minute. I was there most of yesterday getting the ankle bracelet and filling out forms. Been doing that today as well and have to fill out financial disclosures. I will be in touch this week. It's overwhelming."*

q. On October 10, 2025, TSD texted Pittman: *"Chris, you told Ele on Tuesday that you'd 'be in touch this week' with a proposed payment schedule – after already assuring us we'd receive it Monday and failing to follow through. I understand you'd prefer to avoid litigation, but your repeated delays are not showing good faith. That said, I don't want to be forced into that position. However, unless we receive a satisfactory payment schedule – reflecting a meaningful immediate payment – before the weekend is over, we'll proceed with filing the lawsuit early next week. It's unfortunate if it comes to that, but it would be of your own doing."*

r. On October 13, 2025, Pittman replied: *"Chad please be patient. I had to reschedule meetings with my accountants and other attorneys from last week to this week. I will not know what kind of payments I can make until I speak with them. My last meeting is this Wednesday afternoon and then I will text with you."* And TSD immediately answered that: *"The problem I have is the lack of communication without me having to push the issue. Let me know on Wednesday. Thanks."*

s. After receiving no response, on October 18, 2025, TSD sent the following

7

text message to Pittman: "*It's clear to me how seriously you're taking your obligation to us. We'll proceed accordingly.*"

20. To date, Pittman has failed to pay any portion of his $97,000 admittedly-owed balance to TSD. Nor has Pittman even proposed a payment plan to meet that outstanding obligation, despite his repeated promises to do so.

## AS AND FOR A FIRST CLAIM

### BREACH OF CONTRACT

21. Plaintiff repeats and realleges the Paragraphs above as if fully set forth herein.

22. TSD and Pittman consummated the Flat Fee Agreement.

23. TSD fully performed its obligations under the Flat Fee Agreement.

24. Pittman breached the Flat Fee Agreement by failing to pay the Flat Fee in full and leaving an outstanding balance of $97,000.

25. As detailed above, Pittman never challenged the Flat Fee Agreement, the Flat Fee or the $97,000 outstanding balance. In fact, Pittman continuously reaffirmed those obligations.

26. TSD is therefore entitled to breach of contract damages of $97,000 plus pre-judgment interest.

## AS AND FOR A SECOND CLAIM

### ACCOUNT STATED

27. Plaintiff repeats and realleges the Paragraphs above as if fully set forth herein.

28. As detailed above, TSD repeatedly sent Pittman written communications demanding the full payment of the $750,000 Flat Fee and the outstanding balance pursuant to the Flat Fee Agreement.

29. As detailed above, Pittman never challenged the Flat Fee Agreement, the Flat Fee or the $97,000 outstanding balance. In fact, Pittman continuously reaffirmed those obligations.

30. By failing to object and reaffirming those obligations, Pittman accepted the $97,000 owed as an account stated.

31. Accordingly, an account stated was created in favor of TSD for the amount of $97,000.

32. TSD is therefore entitled to account stated damages of $97,000 plus pre-judgment interest.

## AS AND FOR A THIRD CLAIM

## QUANTUM MERUIT

### (Pled in the Alternative to Claims One and Two)

33. Plaintiff repeats and realleges the Paragraphs above as if fully set forth herein.

34. As detailed above, (a) TSD performed services in good faith, (b) Pittman accepted those services, (c) TSD had an expectation of compensation for such services and Pittman knew of the expectation, and (4) the reasonable value of such services rendered is $97,000.

35. TSD is therefore entitled to *quantum meruit* damages of $97,000 plus pre-judgment interest.

**WHEREFORE**, Plaintiff demands judgment as follows:

A.    Compensatory damages of $97,000.

B.    The costs and disbursements of this action.

C.    Prejudgment and postjudgment interest.

D.    Such other and further relief as deemed just and proper by this Court.

Dated: October 21, 2025

New York, New York

Yours, etc.,

TACOPINA SEIGEL & DeOREO

By: _____

Joseph Tacopina
Chad D. Seigel
Matthew G. DeOreo
*Attorneys for Plaintiff*
275 Madison Ave., Fl. 35
New York, New York 10016
Tel: (212) 227-8877
Fax: (212) 619-1028